# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JUAN DAVID RAYMUNDO-
RAXTUN, A# 246 825 971,

        Petitioner,

        v.

JOHN RIFE, ICE Deputy Field
Office Director, et al.,

        Respondents.

CIVIL ACTION NO. 3:26-cv-00779

(SAPORITO, J.)

## MEMORANDUM

On March 26, 2026, the petitioner, appearing through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. In this petition, Juan David Raymundo-Raxtun, a native and citizen of Guatemala, challenges the legality of his pre-removal-order immigration detention without an individualized bond hearing. At the time of filing, Raymundo-Raxtun was being held in the custody of United States Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility, an ICE detention facility located in Pike County, Pennsylvania.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Raymundo-Raxtun initially entered the United States without

inspection at or near El Paso, Texas, on or before March 6, 2023. Pet. Ex. A, Doc. 1-3; Resp. Ex. 2, Doc. 7-3. He arrived in the United States as a 16-year-old unaccompanied minor, traveling to reunite with his father after fleeing violence and abuse from his mother. After being detained for a period by border patrol officials, Raymundo-Raxtun was released into the custody of his father.[1]

In March 2024, Raymundo-Raxtun was served with a Notice to Appear, DHS Form I-862, dated March 5, 2024, which declared him to be subject to removal as an "alien present in the United States who has not been admitted or paroled,"[2] and which directed him to appear for a hearing before an immigration judge in New York, New York, on April 22,

---

[1] An immigration record submitted by the Respondent—a Record of Deportable/Inadmissible Alien, DHS Form I-213, dated August 7, 2025— includes a note suggesting that Raymundo-Raxtun was intercepted by U.S. Border Patrol on November 27, 2022, following his entry into the United States from Mexico, and that he was ultimately released on an unspecified date with a Notice to Appear, DHS Form I-862. *See* Resp. Ex. 1, Doc. 7-2. Both parties have submitted copies of a Notice to Appear, DHS Form I-862, dated March 5, 2024, which states that Raymundo-Raxtun entered the United States "on or about March 6, 2023," and which indicates that it superseded an earlier Notice to Appear dated March 6, 2023. Pet. Ex. A; Resp. Ex. 2. Precisely when Raymundo-Raxtun entered the United States and precisely how long he was initially detained by the border patrol are immaterial to the instant petition.

[2] Notably, a box on the Notice for declaring him to be an "arriving alien" was *not* checked. Pet. Ex. A; Resp. Ex. 2.

2024. Pet. Ex. A; Resp. Ex. 2.

On April 3, 2025, a state family court granted his father legal guardianship, and it further determined that it was not in Raymundo-Raxtun's best interests for him to return to Guatemala, and that reunification with his mother in Guatemala was not viable due to abandonment. Pet. Ex. B, Doc. 1-4. On April 15, 2025, Raymundo-Raxtun filed a DHS Form I-360 petition for Amerasian, widow(er), or Special Immigrant, seeking Special Immigrant Juvenile ("SIJ") classification.[3] Pet. Ex. C, Doc. 1-5.

On August 7, 2025, Raymundo-Raxtun was taken into custody and detained by immigration authorities when he reported as directed for a routine check-in appointment. He was ultimately transported to Pike County Correctional Facility, where he remains in civil immigration detention to this day.

On August 18, 2025, an immigration judge, Hon. Leo Finston, granted Raymundo-Raxtun release on bond in the amount of $5,000 based on evidence presented at a hearing, having determined that

---

[3] SIJ status provides a pathway for certain eligible noncitizens under the age of 21 to obtain lawful permanent residence status. *See generally* 8 U.S.C. § 1255(h).

Raymundo-Raxtun was neither a danger to the community nor a flight risk. Pet. Ex. D, Doc. 1-6. The agency, however, filed an administrative appeal from the bond decision, invoking an automatic stay provision to defer Raymundo-Raxtun's release from custody while it appealed. Pet. Ex. E, Doc. 1-7. *See generally* 8 C.F.R. § 1003.19(i)(2) (providing for an automatic stay of immigration judge order granting release from custody upon the government's filing of a notice of intent to appeal).

On September 5, 2025, while the petitioner's bond decision was pending on appeal, the Board of Immigration Appeals ("BIA") issued its opinion in another case, holding that 8 U.S.C. § 1125(b)(2) governs the detention of *all* noncitizens who are subject to removal proceedings but not on parole, and thus "Immigration Judges lack authority to hear bond request or to grant bond" to such individuals. *See Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. 2025).[4]

On September 17, 2025, Judge Finston entered a written opinion in support of his bond decision. Judge Finston first determined that he retained jurisdiction to determine whether Raymundo-Raxtun was

---

[4] The BIA's decision does not bind this court, which must undertake its own review of the statutory issues presented. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

properly subject to mandatory detention under § 1225(b), and based on the record before the immigration court, Judge Finston concluded that the government had failed to meet its burden of establishing that Raymundo-Raxtun was properly subject to mandatory detention—indeed, the immigration judge noted that the government presented *no* evidence at all in support of this proposition—and the immigration judge held that Raymundo-Raxtun was instead discretionarily detained under § 1226(a). Judge Finston considered the evidence presented at the August 18, 2025, bond hearing and found that: (a) Raymundo-Raxtun did not pose a danger to the community as he had no criminal record at all;[5] and (b) Raymundo-Raxtun did not pose a significant flight risk, noting that the petitioner had entered the United States in 2022 as a juvenile, had a pending SIJ status petition, and was employed, and finding that any risk of flight could be mitigated by requiring Raymundo-Raxtun to post $5,000 bond. Based on these findings, the immigration judge granted

---

[5] In his answer, the respondent has referenced a March 2025 arrest of the petitioner by New York City police on misdemeanor and traffic infraction charges, but these state charges—and Raymundo-Raxtun's arrest record—were ultimately expunged. *See* Resp. Ex. 1. There is no further information about these charges in the record before us. Thus, we consider the petitioner's expunged arrest record immaterial to the instant claim for habeas relief.

Raymundo-Raxtun's request for a change in custody status and ordered that he be released from custody under a bond of $5,000. Pet. Ex. F, Doc. 1-8; Resp. Ex. 3, Doc. 7-4.

On November 19, 2025, the agency filed a motion for a discretionary stay of the immigration judge's bond release decision, which was summarily granted by the BIA on December 2, 2025. Pet. Ex. G, Doc. 1-9; Pet. Ex. H, Doc. 1-10.

On December 19, 2025, the BIA sustained the agency's appeal and vacated the immigration judge's decision granting release on bond. Pet. Ex. I, Doc. 1-11; Resp. Ex. 4, Doc. 7-5. In doing so, the BIA relied exclusively on the legal reasoning set forth in its *Yajure Hurtado* decision, finding that the immigration judge lacked authority to release Raymundo-Raxtun on bond as he was an applicant for admission subject to mandatory detention under § 1225(b)(2)(A). The BIA did not find any error with respect to the immigration judge's factual findings. Pet. Ex. I; Resp. Ex. 4.

In the meantime, on November 4, 2025, an immigration judge

denied Raymundo-Raxtun's application for asylum[6] and ordered him removed from the United States.[7] On December 1, 2025, Raymundo-Raxtun filed an appeal from that decision to the BIA, which remains pending. Pet. Ex. J, Doc. 1-12.

In addition, at some point in December 2025, Raymundo-Raxtun's petition for SIJ status was denied for purely procedural reasons by U.S. Citizenship and Immigration Services, another Department of Homeland Security agency. This denial was based solely on his failure to attend a fingerprinting appointment, which he was unable to attend due to his detention by ICE.

## II.  DISCUSSION

> Since the United States began restricting immigration into this country in the late 19th century, it has distinguished between those noncitizens seeking entry into the country and those already residing within it. Noncitizens "stopped at the boundary line" who have "gained no foothold in the United States" do not enjoy the same constitutional protections afforded to persons inside the United States. But once a noncitizen enters the United States, "the legal

---

[6] It is unclear when the application for asylum was filed. The application itself is not part of the record before the court, and the papers submitted by both parties do not indicate the application's date.

[7] The removal order itself is not part of the record before the court, so it is unclear to us whether Raymundo-Raxtun was ordered removed to Guatemala or to a third country.

circumstance changes," for the constitutional right to due process applies to all "persons" within our nation's borders, "whether their presence here is lawful, unlawful, temporary, or permanent." This distinction between noncitizens who have entered and reside in the United States and those who have not yet entered "runs throughout immigration law."

*Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1113 (D. Idaho 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (citations omitted).

Consistent with this distinction, "[t]wo statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. § 1225 and 1226." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. Sept. 23, 2025), *appeal filed*, No. 25-7429 (9th Cir. Nov. 25, 2025). As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).

Under § 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as an

'applicant for admission.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). Applicants for admission may be detained pending removal under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) applies to aliens who (*A*) are arriving in the United States, *see* § 1225(b)(1)(A)(i) (the "arriving aliens provision"), or have been physically present in the United States for less than two years without being admitted or paroled, *see* § 1225(b)(1)(A)(iii) (the "designation provision"),[8] *and* (*B*) are inadmissible either for misrepresenting a material fact while attempting to gain admission to the United States or for lacking proper immigration documentation. *See* 8 U.S.C. § 1225(b)(1)(A); *see also* § 1182(a)(6)(C) (inadmissibility based

---

[8] This so-called "designation provision" further limits this group of aliens subject to expedited removal proceedings to certain categories of aliens expressly designated by the Secretary of Homeland Security, *see* § 1225(b)(1)(a)(ii), but the current scope of that designation is "the full scope of statutory authority," and thus all aliens who have not been admitted or paroled into the United States and who have not been physically present in the United States continuously for the two-year period prior to determination of inadmissibility are subject to expedited removal under § 1225(b)(1). *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025); *see also Make the Rd. N.Y. v. Mullin*, ___ F.4th ___, 2026 WL 1792978, at *2–4 (D.C. Cir. June 23, 2026) (providing a historic overview of groups designated under § 1225(b)(1)(a)(ii)); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62–64 (D.D.C. 2025) (same), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

on misrepresentation); § 1182(a)(7) (inadmissibility for lack of documentation). For these aliens, § 1225(b)(1) provides for expedited removal proceedings without further hearing or review, unless the alien expresses a fear of persecution or an intent to apply for asylum, in which case the alien is subject to mandatory detention pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal. *See* § 1225(b)(1)(B). *See generally Make the Rd. N.Y. v. Wolf,* 962 F.3d 612, 618–20 (D.C. Cir. 2020) (summarizing expedited removal provisions); *Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d 274, 291–92 (E.D.N.Y. 2025) (same); *Coal. for Humane Immigrant Rts. v. Noem,* 805 F. Supp. 3d 48, 59–64 (D.D.C. 2025) (same), *appeal filed,* No. 25-5289 (D.C. Cir. Aug. 11, 2025).

Section 1225(b)(2) is a "broader . . . catchall provision" that applies to other "applicants for admission" who are "seeking admission" to the United States.[9] *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings,* 583 U.S. at 287. Under § 1225(b)(2), an applicant for admission is placed into ordinary (not expedited) removal proceedings. *See* § 1225(b)(2)(A); *see also id.*

---

[9] The statute expressly provides that § 1225(b)(2) does not apply to those to whom § 1225(b)(1) applies, as well as other categories not relevant here. *See* 8 U.S.C. § 1225(b)(2)(B).

§ 1229a (describing ordinary removal proceedings before an immigration judge). With limited exceptions, however, an alien is subject to mandatory detention under § 1225(b)(2) while removal proceedings remain pending. *See* § 1225(b)(2)(A); *see also* § 1182(d)(5) (authorizing the Secretary of Homeland Security to grant humanitarian parole to aliens awaiting removal proceedings); § 1225(b)(2)(C) (providing that aliens arriving on land from a foreign territory contiguous to the United States may be returned to that foreign territory pending removal proceedings, rather than be detained); *Quijada Cordoba*, 809 F. Supp. 3d at 1113 ("Section 1225(b) mandates detention without bond hearings, except for narrow humanitarian parole.").

Meanwhile, as noted above, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Such aliens who are already present in the United States may be detained pending removal under two separate provisions: § 1226(a) and § 1226(c).

Section 1226(a) prescribes a discretionary detention framework for these aliens when subject to removal proceedings, providing that: "On a

warrant issued by the Attorney General,[10] an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute further provides that such an alien may be released on bond while removal proceedings remain pending. *Id.* § 1226(a)(2). The relevant implementing regulations provide that a § 1226(a) detainee may be released on bond upon showing "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Immigration authorities[11] are tasked with an initial bond or custody determination, *see id.* §§ 236.1(c)(8), 1236.1(c)(8), after which the alien may request an individualized bond hearing before an immigration judge, *see id.* §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19 (setting out procedures for the review of bond determinations by immigration judges). *See generally Nielsen v. Preap*, 586 U.S. 392, 397 (2019) ("If the alien is detained, he may seek review of his detention by an officer at the

---

[10] This statutory authority to issue immigration arrest warrants has been delegated to a number of supervisory immigration officials listed in the applicable regulations. *See* 8 C.F.R. § 287.5(e)(2); *see also id.* §§ 236.1(b), 1236.1(b).

[11] The same supervisory immigration officials authorized to issue arrest warrants. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

Department of Homeland Security and then by an immigration judge (both exercising power delegated by the Secretary); and the alien may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.") (citations omitted). An adverse bond determination by the immigration judge can be appealed to the Board of Immigration Appeals. *See* 8 U.S.C. §§ 236.1(d)(3), 1236.1(d)(3). *See generally Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (summarizing § 1226(a) bond procedures).

Finally, "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. This subsection specifies certain criminal histories that require mandatory detention of aliens who would otherwise be eligible for a bond hearing under § 1226(a). *See* 8 U.S.C. § 1226(c). Such criminal aliens may only be released under very narrow circumstances involving a determination by the Attorney General that the alien's release is necessary for witness-protection purposes and the alien does not pose a flight risk or a danger to the community. *See id.* § 1226(c)(4); *see also Jennings*, 583 U.S. at 289.

The petitioner in this case, Juan David Raymundo-Raxtun, has been detained by immigration authorities without am opportunity to be released on bond pending disposition of his ordinary, § 1229a removal proceedings.[12] In his petition, Raymundo-Raxtun argues that, because he was detained within the interior of the United States, he is not properly subject to mandatory pre-removal-order detention under § 1225(b)(2). Rather, he contends that he may only be properly detained under § 1226(a), which requires that he be given an opportunity for an individualized bond hearing. In addition to this statutory argument, Raymundo-Raxtun argues that his pre-removal detention without an opportunity to be considered for release on bond violates his Fifth Amendment due process rights.[13] Finally, Raymundo-Raxtun argues that his prolonged detention without an opportunity for a bond hearing violates customary international law, citing the International Covenant

---

[12] The parties do not dispute that the petitioner has been putatively detained without an opportunity for release on bond pursuant to § 1225(b)(2).

[13] Having found a statutory basis for relief, we do not reach the constitutional issues raised by the petitioner as alternative grounds for relief. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of defending them.").

- 14 -

on Civil and Political Rights ("ICCPR"), arts. 9(1), (4), Dec. 16, 1966, 999 U.N.T.S. 171.[14]

The respondent, on the other hand, argues that § 1225(b)(2) does properly apply to the petitioner, and that it prescribes mandatory detention. The respondent further argues that applying § 1225(b)(2) here comports with due process.[15]

The respondent purports to have detained Raymundo-Raxtun pursuant to 8 U.S.C. § 1225(b)(2), which provides for mandatory detention without the opportunity for release on bond. The petitioner, however, contends that he could only be properly detained under 8 U.S.C.

---

[14] Having found a statutory basis for relief, we do not reach the petitioner's argument that his prolonged detention without a bond hearing violates Paragraphs 1 and 4 of Article 9 of the ICCPR. *See* ICCPR, art. 9(1) ("Everyone has the right to liberty and security of person. No one shall be subjected to arbitrary arrest or detention. No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law."); *id.* art. 9(4) ("Anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a court, in order that that court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful."). Nevertheless, we note that habeas relief is not available for a violation the aspirational rights set forth in the ICCPR because its provisions are not self-executing. *See Ballentine v. United States*, 486 F.3d 806, 815 (3d Cir. 2007); *Leinenbach v. Williamson*, 152 Fed. App'x 197, 199 (3d Cir. 2005) (per curiam).

[15] *See supra* note 13.

§ 1226(a), and under that statute, he is entitled to an individualized bond hearing.

"[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)), *appeal dismissed*, No. 25-1902 (1st Cir. Dec. 23, 2025); *see also Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) (citing *Martinez*); *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025) (citing *Martinez* and *Kashranov*); *Carrero Romero v. Lowe*, No. 4:26-CV-00009, 2026 WL 296215, at *4 (M.D. Pa. Feb. 4, 2026) (citing *Ramirez-Montoya*). Significantly, "Section 1225(b)(2)(A) applies only to an alien who is *both* an applicant for admission and 'seeking admission.'" *Kashranov*, 2025 WL 3188399, at *6 (emphasis in original); *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov* and *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 406 (D.N.J. 2025)); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*).

- 16 -

Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Meanwhile, the phrase "seeking admission" is not defined in § 1225, and the courts of this circuit have construed the plain language of "seeking admission" to describe "active and ongoing conduct—physically attempting to come into the United States, typically at a border or a port of entry." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (citing *Ramirez-Montoya*). "This reading preserves the distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase carries independent meaning." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*). It also comports with the Supreme Court's finding in *Jennings* that "§ 1225(b) applies primarily to aliens seeking entry into the United States." *Jennings*, 583 U.S. at 297; *Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Jennings*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings* and *Ramirez-Montoya*). "In

sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country." *Carrero Romero*, 2026 WL 296215, at *4; *see also Kashranov*, 2025 WL 3188399, at *7 (considering the statutory context of § 1225(b)(2) and concluding that this provision "contemplates inspection and detention at or immediately following border crossing").

By contrast, as the Supreme Court has previously recognized, "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and it "permits the Attorney General to release those aliens on bond." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*); *Ramirez-Montoya*, 2025 WL 3709045, at *5 ("Unlike § 1225(b)(2)(A), § 1226(a) provides for bond or conditional parole.") (citing 8 U.S.C. § 1226(a)(2)). "[U]nder Section 1226(a) and its implementing regulations, [an alien discretionarily detained pending removal proceedings] is entitled to a bond hearing before an Immigration Judge

at which the government must prove by clear and convincing evidence that he poses a danger to the community[] or . . . that he is a flight risk, if it seeks to continue detaining him." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 277 (D. Mass. 2025);[16] *see also Y.Z. v. Soto*, 812 F. Supp. 3d 459, 462–63 (D.N.J. 2025) ("Noncitizens who are arrested after having lived in the United States for a while do not generally have to be detained. They are instead entitled to a bond hearing before an immigration court." (citing *Gomes*) (citations and footnote omitted)). *See generally Carrero Romero*, 2026 WL 296215, at *4 ("[I]f an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for

---

[16] We note that, applying First Circuit precedent, the *Gomes* court stated that the government may prove that an alien is a danger to the community by clear and convincing evidence, or that he is a flight risk by the lesser preponderance-of-the-evidence standard. *See Gomes*, 804 F. Supp. 3d at 277 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)). The Third Circuit, however, has held that the government must prove either dangerousness *or* flight risk by clear and convincing evidence. *See German Santos v. Warden*, 965 F.3d 203, 213–14 (3d Cir. 2020) ("When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence."); *see also Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 333 n.9 (3d Cir. 2021) ("[I]t is a 'settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government' to a 'clear and convincing evidence' standard in the context of civil detention . . . .") (quoting *German Santos*); *Luciano-Jimenez v. Doll*, 547 F. Supp. 3d 462, 465 (M.D. Pa. 2021) (quoting *German Santos*).

inspection and entry, they are subject to mandatory detention pursuant to § 1225. If they are arrested after having already entered the country, they are subject to detention under § 1226 and are entitled to a bond hearing.").

Here, § 1226(a), not § 1225(b)(2)(A), applies to the detention of Raymundo-Raxtun. We find that Raymundo-Raxtun is no longer seeking admission into the United States—at the time of his arrest and detention, he was not actively attempting to come into the United States at a border or port of entry. Rather, he is already here, having resided within the United States for an extended period of time. *See Kashranov*, 2025 WL 3188399, at *1 (finding that petitioner who lived in the United States for almost two years was not "seeking admission" but "already here"); *Ramirez-Montoya*, 2025 WL 3709045, at *5 (citing *Kashranov*). Thus, Raymundo-Raxtun may only be properly detained pursuant to § 1226(a), and therefore he is entitled to a bond hearing. *See Carrero Romero*, 2026 WL 296215, at *5. *See generally Patel v. O'Neill*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 (M.D. Pa. Dec. 8, 2025) ("The overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens

- 20 -

who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing."); *id.* at *4 & n.7 (collecting Third Circuit district court cases).[17]

---

[17] *Accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 73, 75 (2d Cir. 2026) ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission. . . . Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'"); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) ("[T]he text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior."); *Hernandez Alvarez v. Warden*, 175 F.4th 1258, 1262 (11th Cir. 2026) ("The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (holding that noncitizens without lawful status who had lived in the United States for years were not "seeking admission" and thus were not subject to § 1225(b)(2)(A)'s mandatory detention scheme); *Santillan Quiroz v. Mullin*, ___ F.4th ___, 2026 WL 1876709, at *7 (10th Cir. June 30, 2026) ("The only time a noncitizen can be said to be seeking admission is when he is seeking to

*(continued on next page)*

- 21 -

Ordinarily, we would order the remand of a case such as this for an immigration judge to conduct an individualized bond hearing in the first instance. *See, e.g., Ahad v. Lowe*, 235 F. Supp. 3d 676, 688 (M.D. Pa. 2017) (noting that the Third Circuit has "suggested that, in many instances, th[e] initial bail determination can, and should, be made by the Immigration Judge"). But in this case, the petitioner has *already* received a bond hearing, at which an immigration judge received and considered evidence, finding that the petitioner was not a danger to the community and that any flight risk posed could be mitigated by requiring a $5,000 bond be posted. In reversing the immigration judge's decision granting the petitioner's release on bond, the BIA relied exclusively on the suspect legal reasoning it had set forth in *Yajure Hurtado*, 29 I. & N. Dec. 216, which this and other courts have roundly rejected. *See, e.g., Hernandez v. Kunes*, No. 1:25-CV-01847, 2026 WL 411726, at *4 (M.D. Pa. Feb. 13, 2026) ("The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of

---

enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." (footnote omitted)); *id.* at *15 ("§ 1225(b)(2)(A) applies at the border while § 1226(a) applies to the interior.").

[*Yajure*] *Hurtado*, as contradictory to the plain text of § 1225."); *Maldonado Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026) (vacating *Yajure Hurtado* as contrary to law under the Administrative Procedure Act), *appeal filed*, No. 26-1044 (9th Cir. Feb. 23, 2026); *Bethancourt Soto*, 807 F. Supp. 3d at 408 (expressly rejecting the BIA's reasoning in *Yajure Hurtado*). The BIA did not find any error with respect to the immigration judge's factual findings. Moreover, "settled case law . . . has long recognized that the power to order bail in habeas proceedings is a legal and logical concomitant of the court's habeas corpus jurisdiction." *Leslie v. Holder*, 865 F. Supp. 2d 627, 634 (M.D. Pa. 2012); *see also Ahad*, 235 F. Supp. 3d at 689.

Accordingly, we will adopt the well-reasoned and factually sound findings and conclusions of the immigration judge, as set forth in his August 18, 2025, order granting release on bond[18] and his September 17, 2025, bond memorandum,[19] as our own, and we will order that the petitioner be released from custody forthwith under bond of $5,000.

---

[18] Pet. Ex. D.
[19] Pet. Ex. F; Resp. Ex. 3.

## III.   CONCLUSION

For the foregoing reasons, the court concludes that the petitioner is currently detained pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2), and thus he was entitled to an individualized bond hearing. Accordingly, the petition will be granted, and, in light of the bond hearing previously conducted by an immigration judge in this matter, at which the immigration judge found that the petitioner poses no danger to the community and that any flight risk can be mitigated by requiring a $5,000 bond be posted, the government will be ordered to release the petitioner from custody forthwith under such bond.

An appropriate order follows.

Dated: July __10__, 2026

JOSEPH F. SAPORITO, JR.
United States District Judge